effective assistance of counsel and no amount of testimony will alter the circumstances in this case regarding ineffective assistance. The key to an effective defense here was impeachment of the government's main witness Myron Colvin and it wasn't done. There was a key defense witness to whom he admitted he was in effect framing Kweita Anderson. He told another occupant in the car he was going to lay it all on Kweita because she has no priors and he was never called his witness. The circumstantial evidence in this case is relatively inconclusive. There were three people in the car Anderson, Colvin and a cousin when they were stopped. There were drugs hidden in the car and the prosecution's task then became to find who had criminal intent. Colvin came forward and said that Anderson, it was her deal. She set it up, she negotiated the price and essentially she did almost everything. When he did not say that the cousin was involved in terms of criminal intent they dismissed on him, which shows how weak the case was without Colvin's testimony. Notice that we are listening to your version of the facts here and I wonder if that, if you see the point why this might not be ripe for consideration, this issue of whether counsel is ineffective, whether it's right for consideration at this stage of the game. Well nothing is going to change the fact that during the trial it came out that Colvin had made this statement to the cousin. The defense attorney did not attempt to... So you're going to make the point now that it is ripe for consideration rather than post-conviction. Yes, yes, based upon the fact that really no amount of testimony is going to change the fact that there was clear indication that Colvin, the key witness for the government, admitted he was Anderson to somebody. But somebody, I mean in theory, if it's heard in post-conviction, maybe there'll be testimony from everybody about why that wasn't done, counsel, that sort of thing. There would be, but I don't see how the failure to bring in the cousin could be anything but negligence. Maybe we can't envision it, perhaps there's some testimony that might help. Well he made no attempt, the defense attorney made no attempt to acquire the cousin or to investigate his statement. Do we know that? How do you know that? From the trial testimony, it was clear he admitted that he had not found the cousin and the AUSA said, well he's not hard to find. He detailed all his efforts. You cannot hear me for some reason, I wonder why. No, I'm sorry, he made no effort. He said, I couldn't find him. I'm still saying, so you say. Yes, well that's true. How do I know that? How does this court know? Well, there were statements made during a sidebar, during a proffer, and by the defense counsel to the AUSA trying the case, where it was quite clear that he had not attempted to acquire the cousin's presence and he had done nothing with the statement except to call in relatives to whom it was inadmissible hearsay where the cousin admitted to other people. And he should have done that. He had an obligation to investigate it and to make some attempt to procure the presence of the cousin. Even at trial, he was chided by the judge. Did you even try to find him? He didn't answer. The AUSA said, he's in jail in Ohio, he's not that hard to find, you know. And nothing was done. He could have moved for a while, asked the court for a writ of habeas ad prosequendum, ad testificandum, to bring him in to testify and he did not do so. He made no attempt. And there he could have made the attempt because he knew the cousin's location and he knew what he had to do to bring him in and he didn't do anything except... to drop a writ, contact the authorities, have someone go to Ohio, wherever he was, and bring him in. And that was not done. Let me ask you this, counsel. Traditionally, the claim of ineffective assistance of counsel is adjudicated under 2255. Correct. Right? Yes. It's rare that a court on direct appeal will deal with the issue, is that right? Correct. No 2255 has been filed, has it? Well, actually I did file one. I had to file one because the government was attempting to not allow the appeal because the notice of appeal was filed late due to an error by the attorney. But no, not on this issue. Is that another illustration of ineffective assistance of that counsel? Yes. It's kind of like a garnish on a fine entree of ineffective assistance. The defendant requested that he file a notice of appeal, he admitted she did, he gave her a copy, of what purported to be an electronic filing, but he never filed it. So maybe there would be benefit in having a 2255 where all of the different examples of IAC could be brought together and a compelling case could be made. Well, I think we have a compelling case here. I mean, we have the defense counsel in possession of information. What is your reason for resisting the suggestion that this all be considered in a 2255? What would motivate you to resist that? Well, I believe it unnecessary. I believe the facts are sufficiently developed. You want relief now? Yes. With regard to the vindictive prosecution, let me address that briefly. Let me ask you a question about that. The government in its brief says, indeed, because the United States informed Anderson of its intent to do so during the plea bargaining process, obtaining a superseding indictment cannot support a claim for vindictive prosecution. Would you acknowledge that Anderson was told during plea bargaining, if she doesn't plead guilty, the government's going to bring a superseding indictment and add two additional charges? There was clear, there was actually a filing in addition that notified her. No, I know they filed it, and I know the motion. I'm asking you, during the give and take of the plea bargaining, was Anderson personally informed that if she didn't plead guilty, additional charges would be brought against her? I have no idea whether the plea bargaining notified her of that, a pleading notified her of that, that they would file. We don't know what went on in plea bargaining. Pardon? We don't know what went on in the plea bargaining. But the government says this in its brief, that she was told during plea bargaining process of the government's intention to bring additional charges if she didn't plead guilty. She probably was informed of that, but not told what the charges were or what the penalties were. Did anyone ask? I have no idea. It's not on the record, which is the problem here. We have the superseding indictment, which substituted harsher charges in retaliation for her decision to go to trial, and there's no on the record explanation to justify it. There are no new facts presented. There's nothing. And that's the problem. We're trying to guess what went on in the ethers of the brainwaves of the people. Well, the motion said they were going to bring additional charges. It's just not specific. And that's the problem. If saying you're going to bring additional charges doesn't tell the defendant what she's facing, she didn't know she was going to face a mandatory minimum incarceration charge, none of that was on the record. Our position is that's what needs to be done. It isn't enough to just say, I'm going to do something more. But your position sounds like it's going to make a charge of vindictive prosecution any time that additional charges are filed against someone after they refuse to make a guilty plea. And they should be, because that's exactly the situation. It is punishment for their decision to go to trial. If it is put on the record, it is condoned by Borden-Kircher v. Hayes, but it is only condoned because then, and only then, is it equivalent to the situation where a prosecutor initially indicts all charges, the more serious and the lesser, and offers a plea bargain where the defendant can plead to the lesser and the harsher charges will be dismissed. That's the rationale, and that is the way the court analyzed the situation. They didn't like the superseding retaliatory indictments, but they said if there's notice, then it is equivalent to a situation which we know is okay, where the prosecution can indict everything and throw the more serious ones out for a plea. But without knowing what's happening, you don't know what's going on with the harsher charges, and you can't factor that into your decision on whether or not to go to trial, and that's the problem here. I mean, a lot of our, you know, I have great respect and reverence for the system we're in, I'm sure you do too, but a lot of our people do not. They feel they are harshly and unfairly targeted and treated. This kind of thing is an example. Let me ask you this. She had different counsel at trial. Yes. She had different counsel negotiating for her. Yes. Did you ever talk to her earlier counsel and ask him? No, because it's not on the record. I didn't ask you whether it was on the record. I just said did you call him and said, listen, I'm now handling the appeal. I'd like to know what went on during the plea bargaining. No, I wrote him and he never responded. You didn't follow up in any way. I don't recall. Thank you. The problem with the retaliatory prosecution is it may be widespread. Everyone seems to have missed the fact that Vordenkircher v. Hayes requires that the charges be disclosed so the defendant can make an intelligent choice. That's what's lacking, and that's why it's wrong. And if it's going on nationwide, it's not good. It does not promote respect. Did you ever ask Ms. Anderson? Excuse me? Did you ever ask the defendant? Did she know? Yes, she didn't even know what a superseding indictment was. Okay. I had to explain what it was, and she didn't understand why the charges were all of a sudden harsher. But the counsel she had, I'm not sure it was being communicated to her. I'm not sure he was paying any attention. Your position is that under Vordenkircher, the government must disclose what the additional charges will be. Correct. And this was not done in the written document here. Or on the record. It could be a two-minute hearing. I'm just trying to be precise. And it was not done in anything that's on the record here. So we don't know whether there was an oral communication that she could be charged with another count of this, and another count of that, and the possession charge, and so forth. Right. So how does an appeals court decide that issue? Is this something that's appropriate for a 2255 also, where there can be record development in the district court? Or if we don't know what happened in the plea negotiation, it's sort of hard to say you win or the government wins, unless we're deciding totally on the burden of proof. Well, yes. I would say deciding on the burden. Vordenkircher v. Hayes' logic and rationale requires that there be that disclosure on the record to dispel the presumption of vindictiveness, which this court in Andrews indicated there's no clearer case than what we have here. No clearer case. And this could be going on all over the nation. Would it be sent back for the district judge to hold an evidentiary hearing on what occurred during the plea bargaining? Well, it could, but it wouldn't solve the fact that we have a vindictive prosecution. Well, if she knew during plea bargaining and was told expressly, listen, if you don't plead guilty, the government is going to bring additional charges of possession with intent to distribute. For 43 grams of crack, because that's the key charge. Whatever it was, because the first two counts were conspiracy. Right. Well, underlying conspiracy sometimes is possession. So don't you think we ought to know exactly what occurred during the plea bargaining? Well, no, because it needs to be on the record, according to the Supreme Court in Vordenkircher v. Hayes. I don't think Vordenkircher said it had to be on the record. I think Vordenkircher said that the defendant had to know and did know. Well, I'm not sure if it was Vordenkircher or one of the later cases, but it's clear that only an on-the-record explanation will dispel the presumption of vindictiveness, which flows from the retaliatory act of substituting harsher charges. Whether or not it was retaliatory, because Vordenkircher said it's all part of plea bargaining. Well, right, but in Vordenkircher it was clearly disclosed. They were discussing the higher charges and the penalties, and the defendant chose trial. So there it was, I mean, there was no issue the way we have here. The penalties were known and discussed. It was kind of crazy for the defendant to choose going to trial and facing a potential life in prison. Has this court ever said that district courts in these kinds of circumstances should hold a hearing or have the proceeding in open court so the district court is satisfied that the defendant knows what's going on, as distinguished from the lawyer knowing what's going on? Well, that's been done in other contexts, like in communicating a plea offer before there can be a trial. That's done now, but not on this issue. No one has really addressed this issue. And the best cases that you cite are Andrews and Vordenkircher? Yeah, yes. Andrews is where this court said, where a prosecutor who has already exercised his discretion in deciding what charges to file substitutes a more serious charge without additional facts in retaliation for a defendant choosing trial, it is the clearest possible case for a presumption of prosecutorial vindictiveness short of an actual confession by the prosecutor. And there needs to be an on-the-record explanation, which we do not have. So we have a vindictive prosecution here, there's no doubt. And there needs to be an on-the-record, is that in Andrews' opinion? I honestly don't recall if it's in Andrews' or something else. That is a requirement, and I would rely upon the brief for that. Thank you. We've kept you over your time. Yes. Thanks very much. Good morning, Your Honors. Adam Reeves on behalf of the United States. Your Honors, candidly, I agree with Mr. Sasse in many of his comments about the record in this case. This record lacks evidence of whether the defendant in this case did in fact reject plea agreements, that she invoked her right to go to trial. Any of your communications? Counsel, you say in your brief the United States informed Anderson of its intent to do so during the plea bargaining process. That's correct, Your Honor. You're telling us that Ms. Anderson personally knew that if she didn't plea, additional charges would be brought against her. What's the basis for that? Your Honor, I should clarify that that particular section of the brief refers to the motion to continue that was filed by the government in this case. But the motion, all it says is other charges are going to be brought. The motion doesn't say we're going to charge you, we're going to ask the grand jury to return a superseding indictment, which will include charges of possession with intent, does it? The motion to continue does not get that specific. That's correct, Your Honor. It didn't, and the district judge wrote a very long memorandum granting the motion to adjourn, didn't he? That's correct. But the district judge never asked you what are the additional charges that are going to be brought, did he? Well, no, and that's in large part because of the procedural context of this case, Your Honor. Pardon? The procedural context of this case, the grand jury met before the district court in this case, Your Honor, had an opportunity to rule on the merits of the motion to continue. In fact, if I may cite to my notes, the motion to continue was filed on January 22nd, and at docket entry number 50, you'll see the superseding indictment was then filed by the grand jury or brought by the grand jury. Two days later? That's correct, Your Honor. So at the time you filed the motion, you knew what you were going to ask the grand jury to do? I suppose so. It's not clearly articulated in the record, Your Honor. And we don't know whether Ms. Anderson personally was told, if you don't plead, you're in deeper trouble than you are now. There's no evidence in the record of her personal communications either with her own counsel or with the government in this case, Your Honor. All we have to go on is the filing that's been made in the motion to continue. Now, I don't think that the Supreme Court... whatever other binding precedents we should be looking at. I think that it is, Your Honor. I think when Bordenkircher, the Supreme Court, articulated the types of values that we see in plea negotiation, they didn't specifically require that the defendant know exactly what you're cutting down the pipe. I would say in Bordenkircher, five of the justices said that. Four of the justices disagreed, including Justice Powell. Yes, Your Honor. Right? I believe so, Your Honor. Don't you think the better practice is to do this sort of thing in open court? I disagree. Yes, in open court where the defendant is there. So the judge knows that the defendant has been told by the lawyer. I certainly agree with you, Your Honor. That's a way to guarantee that everybody has notice. But I think that ignores the very nature of the plea bargaining process. As we argue in our brief, plea bargaining is something that by its very nature occurs off the record. These are communications between counsel in person or sometimes with the defendant present, and there's simply no opportunity. And that's why Rule 12, in fact, requires that a defendant make some sort of motion before trial articulating exactly why, in this case, she believed she was vindictively prosecuted. This goes to my question and asks you to clarify. Counsel says there's a presumption of vindictiveness every time additional charges are brought following plea negotiations. What is your view of that? I would certainly disagree with that, Your Honor. Please elaborate on that. I would point this court to the United States Supreme Court's decision in U.S. v. Goodwin where there, and particularly with reference to footnote 15, if the only evidence on the record is that the United States obtained a superseding indictment after the point in time in which the defendant chose to go to trial, then there can be no presumption of vindictiveness because there are simply too many reasons why the government might supersede. Of course, there might be an opportunity. Is then the defendant's burden to offer evidence to show that actual vindictiveness motivated the government in bringing the charges, being disappointed or angry that the defendant failed to accept the bargain? That's correct, Your Honor. I would add that the defendant simply has the opportunity at that point to explain why the particular facts of the case even give rise to the presumption. But what the Supreme Court made so clear in Goodwin was that we cannot derive this presumption simply by the addition or substitution of additional charges in a superseding indictment. In fact, footnote 15 is exactly the case that we have here because Ms. Anderson did not file a response to the motion to continue that said, hey, wait a minute, I think I'm being vindictively prosecuted. Nor did Ms. Anderson file... She didn't know that there were additional charges that actually were being made against her, right? I would actually disagree with that, Your Honor, although not because there's anything in the record that tells us one way or another. My subjective behind-the-curtain understanding of this case is that there was, in fact, meetings with the defendant and her counsel in which she was informed of these possibilities. But of course... But that's not on the record. Of course. We can't consider that time-wise. Certainly. I was speaking about at that point in time when her then-counsel said something like, no objection or no contest or tell me what the exact words were. I believe the exact line was they took no position, Your Honor. Took no position. At that point, she did not know the exact charges that would be brought against her in the superseding indictment, right? That's correct. With what we have on the record is by virtue of the motion to continue, all she knew, again on the record, is that additional charges would be brought. All that her lawyer knew. I beg your pardon? All that her lawyer knew. You don't know what her lawyer told her. No, I don't. And if we are now alleging that her lawyer failed to inform her, then I think we've expanded the argument that's being made on appeal into one of ineffective assistance of counsel, which I would argue this court has no recourse to address in this proceeding and that, as this court suggested just moments ago, might be more appropriate in the context of a 2255 action. So could there be arguably an IAC claim having to do with this vindictive prosecution argument? I think maybe the nature of the ineffective assistance claim would be the following. I'm speaking as the defendant. My attorney never informed me that there might be more charges and never made a motion to dismiss the augmented charges. Let me add something to that. Colvin testified at trial, didn't he? Yes, he did, Your Honor. Colvin wasn't included in the superseding indictment, was he? That's correct because I think in January 16th. But the superseding indictment came before he pleaded guilty. Well, Your Honor, he moved for rearrangement to notify the court that he was going to plead guilty on January 16th, 2013. And as Your Honor noted, the indictment was not issued until later, January 24th. Now, whether Mr. Colvin in fact stated on the record at the time of the rearrangement, yes, I'm pleading guilty now, for purposes of this court's review, I think it's important to note the time that he moved for rearrangement because that signifies to both the other defendants in the case, the court and the government, that he would intend to plead guilty. So I think it's the timing of that motion, not when he in fact did finally enter his guilty motion. I accept that. Thank you, Your Honor. And I think in this case all of this goes back to whether Ms. Anderson filed in the record some grounds upon which she believed she was being vindictively prosecuted because if we have anything other than... What could a defendant have as grounds if the AUSAs don't explicitly say we're going to punish you vindictively? Well, I think we can look at a couple of the Sixth Circuit's opinions on these cases to get a good sense of the context because I think we need timing and something else. In Andrews, it was the filing of a successful bail motion where the defendant had been initially charged with certain counts and then actually got out of prison pending trial, and the government reacted by then obtaining a superseding indictment by which it felt it would put him back in jail until trial. It was that context that the court in Andrews felt, well, this is at least where we get a reasonable likelihood of vindictiveness, and that's really the only answer we're going for here. I would point the court to this court's decision in U.S. v. Ladeau where the court looked at another motion to suppress that the superseding indictment had been filed at least by its timing in response to what the court felt was a very valid or meritorious motion to suppress. Here, of course, we have no such procedural context. There were no motions to suppress or any other procedural efforts that accompanied the timing of the superseding indictment. So the timing alone, is timing alone proof that the government acted vindictively, and is it not the burden of the, or whose burden is it, to show that the timing resulted from an awful vindictiveness on the part of the government? Your Honor, the Supreme Court in Goodwin is explicitly clear on this. Timing alone cannot raise a reasonable likelihood that the indictment is vindictive. If all you have is timing, then it is the burden of the defendant to demonstrate in a motion filed according to Rule 12, lest it be waived, that there are other grounds as to why the government is filing that superseding indictment. Let me ask you a question. No motion was filed here, so we're, I'm sorry, may I finish this? Yeah, I'm sorry. No motion was filed here. No, Your Honor. And therefore, are we into a plain error setting? No, Your Honor. This claim has been waived by the failure to raise it prior to trial. Isn't that plain error then? Plain error under the Soto case. I would respectfully disagree, Your Honor. I think the way that Rule 12, formerly Rule 12e, and now Rule 12c3, has been interpreted is actually that the intentional relinquishment need not be demonstrated in order to effect an appellate waiver. I would point this court to two decisions prior to the amendments to Rule 12, now c3, U.S. v. Turner and U.S. v. Caldwell. And especially the court in Caldwell explained its reasoning why plain error isn't exactly the most convenient way to look at these because there's really nothing, if it's not raised below, there's nothing to look at, nothing that the district court would have seen as being plain to have recognized an error. And I think prosecutorial vindictiveness... We're still talking about plain error as a topic, and then we know that it has parts, right? Correct. So it's got to be error and it's got to be plain, right? Correct. Is that what you're addressing with your argument here? Your Honor, I think what I'm attempting to articulate is that for those issues that Rule 12 says must be raised before trial, the reason that they are then waived, of course this is subject to the court's interpretations of the amendments, but the reason, at least prior to that, that they are waived is because there's not enough of a record to even see a plain error, and this is perfect for... Are you familiar with the Sato-Santana case that the circuit decided for... I certainly am, Your Honor. Okay, so that held that it was not waiver but was to be reviewed under plain error. Correct. Okay. That, I would argue, though, unfortunately was based upon a lack of the appropriate amendments. Certainly. It's almost as though you're not recognizing the existence of that published case. I certainly recognize the existence, Your Honor, and I would, of course, argue here that the consistent interpretation of Rule 12 should be continued, but even if not, even if we proceed under maybe the intentional relinquishment standard that the court articulated in Soto, I think that we see in taking no position to a motion to continue on the basis that new charges be added. There's at least some evidence that Ms. Anderson, in fact, intentionally relinquished her ability or her opportunity, at least at that point, to object to the addition of those new charges. So I think... I beg your pardon. Waiver is distinguishable. Waiver and forfeit are quite different. Correct. So we would have a forfeit? I think under the government's interpretation of Rule 12, as it continues, we would have a full waiver, even though, and I really don't think the result changes, no matter what standard of review gets applied to this case. Plain error is extremely difficult, of course, for the defendant to obtain, and I think particularly so in circumstances where one is arguing prosecutorial vindictiveness, especially with plea negotiations. As I mentioned earlier, these are proceedings that take place, by their very nature, off the record. And I think if the remedy in this case is that the government is supposed to create a whole new hearing in which it articulates in every case in which it obtains a superseding indictment exactly why it's doing so and exactly when it told the defendant about that, then I think we've stretched the legal precedents of Goodwin and Bordenkercher simply too far. So the big question seems to be, is there a duty on the part of the government to indicate to the defendant in some way before the defendant takes the fatal step of rejecting a plea bargain for the government to reveal what the specific charges that a superseding indictment might contain would be? And is there such a duty? Your opponent says that there is and cites Bordenkercher, and I believe Andrews for that principle. Do you agree that there is such a duty and that we're really just concerned here about what happened factually? Your Honor, my reading of Bordenkercher and Andrews is that there is no affirmative duty that the United States inform the defendant explicitly, here are the charges that we intend to bring. For example, we are now going to charge you with possession with the intent to distribute over 28 grams of crack cocaine. Okay, and so you're getting that from reading Bordenkercher and Andrews? That's correct, and Goodwin I would argue as well. Those are the three cases that you would say we should read to answer this question? That's correct. I think none of the Sixth Circuit's opinions nor the Supreme Court's are even quite so heavy with regard to the burden upon the United States as to what type of notice need be provided. So why does just giving notice, hey, we're thinking of additional charges, why should that be enough as opposed to a specific requirement of specific charges that could be imposed? Well, I think it's important to look at the context in which this notice requirement, if that's even what Bordenkercher requires. This comes as a part of plea bargaining, and I think here if we are asking for the government to provide explicit charges, then it requires the courts to police the process of plea bargaining at far too great a degree. Hypothetically, all that my hypo would require is a written filing by the government saying we are contemplating the following superseding additional counts. I think, though, Your Honor, in many cases that would be superfluous. I think the court in good way. Then it's not a problem if it's superfluous. What's wrong with requiring the government to state on the record in writing, so we don't have to go into what the plea bargaining is in and out, why not require specifically the government to say we're going to charge you with a possession count of more than 28 grams, which is going to throw you into a mandatory minimum? I think what the problem is with that is that it effectively shifts the burden. In this case, the defendant always has the burden to raise a reasonable likelihood of vindictiveness. Is there a difference between vindictive and in response to? I think that's an interesting question. In Bordenkercher, we saw actual vindictiveness because it was the sole basis for the superseding indictment. But just because one files a superseding indictment does not mean that they are being vindictive. That can, of course, rely on a number of things, new evidence being one of them. The superseding indictment relied on acts that occurred at the same time as the acts charged in the initial indictment. It's not that the government unearthed new evidence, is it? It's just that they sort of had it in their pocket. And if you don't plead guilty, we're going to take it out of our pocket and put it on the table. I'm not even sure that was the case here, to be quite candid, Your Honor. Two superseding, if I can use that language here, events that occurred in between the time of the second indictment and the initial filing, one of the defendants decided to plead guilty. That, by itself, might create a reason to supersede. The other, of course, and again this is behind the curtain, but we're dealing with drug quantities and purity levels, which, of course, this case started by way of a criminal complaint, which there would have been no knowledge of exactly how pure that substance was. There was four months between the indictment, September 26th, and the superseding indictment, January 24th. That's correct, Your Honor. And if I may finish by, I think, returning to my answer to your question, Judge Moore, by requiring the government to affirmatively state every time that it obtains a superseding indictment, what we've done in creating such a rule is effectively place the burden on the government to dispel any appearance of vindictiveness or to, in fact, state, look, we're being vindictive because we've threatened to supersede. Does such a rule exist anywhere? I beg your pardon. I was a little unable to catch both questions, but I'll answer Judge Cook if you don't mind. By talking about this rule, this rule in the ether here, we start with the proposition that you don't know any such law that requires it. That's correct. There is no case that I'm aware of that states... What we're talking about is maybe making new law that doesn't exist. Yes, and this is my effort in responding to Judge Moore's question is that even if the best practice, so to speak, would be to put this type of information into the record, it's not what the Supreme Court's case law requires, and I think it would require the addition of new law, and this is my point when I say if the remedy here is the creation of an entirely new hearing in which the government has to put evidence on the record of this, it cannot be consistent with the case law that talks about prosecutorial vindictiveness. But my hypo was not a hypo that there be a hearing. My hypo was that the government have to put a written document in the record before the defendant finally rejects the plea bargain, saying we are going to move for a superseding indictment, adding charges 1, 2, 3, and 4 with specificity. And I guess I don't feel like I've heard a convincing rejection of that because it doesn't put any burden on the government except to file this document. That's correct. If you want to respond to that and tell me that I didn't hear right or that there's something else that you want to say, that would be fine. Your Honor, thank you. I think the same distinction applies, whether it's a hearing or an additional document that's filed in the record. Regardless of the physical toll or time burden on the government for placing that document in the record, the effect is still to shift that burden of whose job is it to raise the reasonable likelihood of prosecutorial vindictiveness. And by doing that, what I think the court signals is that, well, previously we've said we do not presume, at least in the pretrial context by virtue of Goodwin and Bordenkercher, that the government is being vindictive when it adds charges. The benefit, though, is it's informing the defendant on the record, in case you have incompetent trial counsel or a defendant who's got her head in the sand. You are having an explicit written document that says, hey, defendant, we're offering you a plea bargain. If you don't accept, fine, but we are going to get a superseding indictment if we can from the grand jury, and you are going to be subject to a mandatory minimum of twenty years or whatever the mandatory minimum is, which might well lead a defendant to think carefully about that plea bargain offer. I certainly agree with the merits of what this would accomplish, right, the notice, et cetera, but I simply, and maybe this is where we part ways, Your Honor, but I don't think any case requires the government to do so, and I'm concerned that that shifts the burden in this case where it's unfairly upon the United States to dispel vindictiveness rather than with a defendant to prove it, Your Honor. And I'm phrasing it as a burden to notify the defendant. I understand. That's all how one characterizes it. I understand, and I've been reminded that, and I apologize in my response to your raising Soto. I'm of the understanding there's rehearing, at least petition for in that case, but to clarify my answer, I think even with Soto, we meet the waiver requirements in that, subject to the Court's rest of the questions, so thank you, Your Honors, very much. I don't know if I have any time left since I ran over it before. No, we took both of you over, so you have a wonderful amount of time. All right, thank you. First of all, I think it's disingenuous to imply that there were new facts or purity levels affected the charge. The 43 grams of crack could not have been mistaken for being under 28 grams. They knew. They knew that early on. The requirement for an on-the-record explanation is in Andrews. It's on 633 Fed 2nd, page 456, and the requirement is quite clear that there must be an explanation on the record so the Court doesn't have to delve into the plea bargaining between the parties and get involved in that. It is when the government chooses to raise the charges and substitute harsher charges in retaliation for someone going to trial that there is clear vindictiveness. In this case... May I interrupt you, counsel? Isn't the concept, in the broadest understanding of defendants and the government of plea negotiations, we're talking about what sentence you'll get for these charges and the possibility of other charges or reducing charges. It's about sentencing options, isn't it? Sure. I mean, everybody understands that. Sure. So what's the... I'm not sure the point that you're saying that somebody doesn't know that they're talking about reductions or additions to get to a deal. Well, it's fundamental fairness in allowing the defendant to know what they're facing. In this case, Colvin could have faced a mandatory minimum 10 years if he were charged as Quita Anderson because he has a prior conviction. He gets off with 46 months. He cooperated, did he not? He chose not to go to trial. That's the distinction. He was not cooperating. He testified. Testified. He did testify, but he said he didn't want to. He had to be subpoenaed, yada, yada, yada. I'm not sure how true that was because I think the government had hold over him anyway. He assisted the government by testifying. But that's not why he got his deal. I'm stunned that you know how he got his deal. Well, I have his plea agreement here, and it says nothing about that. Well, that's not necessarily how he got his deal. Well, no. He decided to plead early on and pled to the charges that were present then. It was when someone chose to go to trial that all of a sudden the heavier charges came raining in on them, and it's clear that that was in response to the choice of trial, and that is vindictiveness, and the explanation according to Andrews must be on the record, and there is none. Thank you. Thank you both for your argument. The case will be submitted. The case that was scheduled for later this morning is postponed until tomorrow, and we have one case submitted on the briefs, and so would the clerk recess court.